IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LAERA REED,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN OURADA, individually and in his official capacity; PAUL WESTERHAUS, individually and in his official capacity; WAYNE S. OLSON, individually and in his official capacity; WENDY PETERSON, individually and in her official capacity; BRIAN GUSTKE, in his individual capacity; LORI McCALLISTER, individually and in her official capacity; KYLE HOFF, individually and in his official capacity; and CHARLES PALMER, individually and in his official Capacity as Director of the Iowa Department of Human Services.<br><br>        Defendants. | Law No. 17-cv-590<br><br><br>COMPLAINT AND JURY DEMAND |

COMES NOW, the Plaintiff Laera Reed, and in support of her Complaint and Jury Demand, respectfully states to the Court as follows:

## INTRODUCTION

1.  This is an action for damages arising out of the cruel and unusual punishment of a 16-year-old girl repeatedly placed in isolation cells, excessive force, the deprivation of the Plaintiff's liberty interests without due process, and the

Defendants' intentional infliction of emotional distress between July 15, 2015 and April 8, 2016.

## **JURISDICTION**

2. Plaintiff's action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the eighth fourteenth amendments to the Constitution of the United States, pursuant to article I, sections 17, 8, and 9, and pursuant to the common law.

3. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and 1331. The supplemental jurisdiction of the Court to hear and decide the pendent claims arising out of state law is invoked pursuant to 28 U.S.C. § 1391(b).

## **PARTIES**

4. Plaintiff Laera Reed is currently a resident of the County of Polk, State of Iowa. At all times material hereto, Plaintiff Laera Reed was a resident of the County of Emmet, State of Iowa or a resident of the County of Lincoln, State of Wisconsin.

5. Defendant John Ourada is believed to be a citizen and resident of the State of Wisconsin. At all times material hereto, he was employed as Superintendent of the Lincoln Hills/Copper Lake School, until he abruptly left the position in late 2015.

6. At all times relevant hereto, Ourada knew of the systemic and excessive use of isolation cells and excessive force at Copper Lake which resulted in the violation of Ms. Reed's rights and directly supervised the placement of Ms. Reed in

2

isolation cells and excessive force. Despite such knowledge Ourada failed to properly train and supervise Defendants Peterson, McCallister, and Copper Lake staff and acted with deliberate indifference in doing so.

7.    Defendant Paul Westerhaus is believed to be a citizen and resident of the State of Wisconsin. At all times material hereto, he was as employed Administrator of Juvenile Corrections until he abruptly left the position in late 2015.

8.    At all times relevant hereto, Westerhaus knew of the systemic and excessive use of isolation cells at Copper Lake and excessive force which resulted in the violation of Ms. Reed's rights and directly supervised the placement of Ms. Reed in isolation cells. Despite such knowledge Westerhaus failed to properly train and supervise Defendants Ourada, Olson, Peterson, McCallister and Copper Lake staff and acted with deliberate indifference in doing so.

9.    Defendant Wayne S. Olson is believed to be a citizen and resident of the State of Wisconsin. He replaced Defendant John Ourada as Superintendent of the Lincoln Hills/Copper Lake School.

10.    At all times relevant hereto, Olson knew of the systemic and excessive use of isolation cells at Copper Lake and excessive force which resulted in the violation of Ms. Reed's rights and directly supervised the placement of Ms. Reed in isolation cells. Despite such knowledge Ourada failed to properly train and supervise Defendants Olson, Peterson, McCallister, and Copper Lake staff and acted with deliberate indifference in doing so.

11.     Defendant Wendy Peterson is believed to be a citizen and resident of the State of Wisconsin. At all times material hereto, she was employed as Deputy Superintendent of the Lincoln Hills/Copper Lake School or the Education Director for the campus at the Wisconsin Girls State Training School (Copper Lake).

12.     At all times relevant hereto, Peterson knew of the systemic and excessive use of isolation cells at Copper Lake and excessive force which resulted in the violation of Ms. Reed's rights and directly supervised the placement of Ms. Reed in isolation cells. Despite such knowledge Peterson failed to properly train and supervise McCallister and Copper Lake staff and acted with deliberate indifference in doing so.

13.     Defendant Brian Gustke is the Director of Security at Copper Lake. As Director of Security, Defendant Gustke is responsible for the security and discipline of inmates at LHS and CLS.

14.     At all times relevant hereto, Gustke knew of the systemic and excessive use of isolation cells at Copper Lake and excessive force which resulted in the violation of Ms. Reed's rights and directly supervised the placement of Ms. Reed in isolation cells. Despite such knowledge Gustke failed to properly train and supervise Copper Lake staff and acted with deliberate indifference in doing so.

15.     Defendant Lori McCallister is believed to be a citizen and resident of the State of Wisconsin. At all times material hereto, she was employed as Copper Lake

4

Corrections Unit Supervisor at the Wisconsin Girls State Training School (Copper Lake).

16.    At all times relevant hereto, McCallister knew of the systemic and excessive use of isolation cells at Copper Lake and excessive force which resulted in the violation of Ms. Reed's rights and directly supervised the placement of Ms. Reed in isolation cells. Despite such knowledge McCallister failed to properly train and supervise Copper Lake staff and acted with deliberate indifference in doing so.

17.    Defendant Kyle Hoff is believed to be a citizen and resident of the State of Wisconsin. At all times material hereto, he was employed as a security guard at the Wisconsin Girls State Training School (Copper Lake).

18.    Defendant Charles Palmer is believed to be a citizen and resident of the State of Iowa who was employed as Director of the Iowa Department of Human Services.

## FACTUAL ALLEGATIONS

### Iowa Juvenile Proceedings

19.    On January 14, 2014. the State of Iowa closed the Iowa Girls State Training School (the Iowa Juvenile Home) in Toledo, Iowa due to, among other things, abuse of juveniles by use of isolation cells.

20.    Consequently, for $301 per day per girl, the State of Iowa, by and through Charles Palmer contracted with the State of Wisconsin for use of the Wisconsin Girls State Training School (hereinafter, "Copper Lake") in Irma, Wisconsin.

21.    In June 2015, Laera Reed was the in the custody of the Director of the Iowa

Department of Human Services, defendant Charles Palmer, pursuant to Court Order in Emmet County Juvenile case number JVJV002645.

22.    At all times material hereto, the State of Iowa, by and through Charles Palmer and the Iowa Department of Human Services, monitored and received reports concerning Laera Reed's confinement at Copper Lake.

23.    In 2015, Ms. Reed was sixteen years old.

24.    On the 4th of June 2015, an uncontested adjudicatory hearing and contested dispositional hearing was held in Reed's case.

25.    Reed desired a less restrictive placement at the Clarinda Academy in Iowa where she had previously been successfully discharged.

26.    Clarinda Academy had indicated that they would accept her into their programming.

27.    Further, Reed argued that too little was known about Copper Lake and that sending her to such facility would be like playing "Russian Roulette" with her placement.

28.    On June 4, 2015, the Juvenile Court ordered Reed to be placed at Copper Lake.

29.    On December 18, 2015, a Review Hearing was held.

30.    Reed's position was that she should be released from Copper Lake as her mental health and behavior had actually worsened since arriving at the facility in July of 2015.

31.    On January 4, 2016, the Juvenile Court ordered Reed to remain at Copper Lake,

6

however, the Court ordered a full report from the Guardian Ad Litem concerning

Copper Lake and allegations of mistreatment.

**History of Copper Lake**

32.   Prior to 1994, the Wisconsin state juvenile institution for girls was located at

Lincoln Hills in Irma, Wisconsin.

33.   Governor Scott Walker assumed office on January 3, 2011.

34.   Shortly thereafter, on June 1, 2011, Governor Walker's campaign promise to "cut

costs" was manifested in that the students at the Wisconsin state juvenile

institution for boys, Ethan Allen and Southern Oaks, were consolidated into

Lincoln Hills.

35.   The girls were then held at a separate facility called "Copper Lake School," within

Lincoln Hills.

36.   Copper Lake is considered a "type 1 secured juvenile correctional facility" (JCI).

37.   Since 2011, Copper Lake has had a very high turnover rate of employees, which

has a general ancillary effect of over worked and untrained staff: staff charged

with the supervision and interaction with girls who have highly specialized

behavioral and mental health needs.

38.   In February 2012, Racine County Wisconsin Circuit Court Judge Richard Kreul

wrote to Governor Scott Walker and expressed grave concerns about the safety of

youth at the facilities: "Almost 50 years in the legal system and I've seen and

heard a lot, so [I'm] not naïve as to what 'prison' is all about. But the indifference

7

in this sordid tale is absolutely inexcusable. I'll be thinking long and hard before

sending another youth to that place!"

**State and Federal Investigation**

39.  On December 5, 2015, at 6:00 a.m. in the morning, two dozen state investigators

abruptly arrived at the Lincoln Hills/Copper Lake School as part of a criminal

probe into abuse of minors by staff and attempts to cover it up.

40.  On December 6, 2015, the investigators interviewed the juveniles.

41.  There were 36 female inmates at Copper Lake.

42.  Reed was one of the girls interviewed not once, but twice.

43.  During Reed's interview, a narrative report was produced and photographs of

both her lip and fingers were taken.

44.  Assistant Wisconsin Attorney General, Christopher Liegel is leading the

investigation and current criminal proceedings in Lincoln County, Wisconsin.

45.  Days ahead of the investigation, John Ourada, the school's superintendent, and

Paul Westerhaus, the administrator of juvenile corrections for the state, left their

jobs.

46.  State officials indicate Ourada and Westerhaus' departures were related to the

probe but declined to say more.

47.  On January 15, 2016, Milwaukee County Chief Circuit Judge Maxine White

visited the Copper Lake facility.

48.  After her visit she indicated that she "was unable to sleep for days".

49. She indicated that the treatment of the youth at Copper Lake is "inhumane" and that "we have subjected them to harm."

50. Consequently, on February 4, 2016, the County of Milwaukee, Wisconsin declared a state of emergency and passed a measure to release $500,000 in funding for alternative placement for its youth.

51. Milwaukee County alone has 140 boys at Lincoln Hills and 18 girls at Copper Lake.

52. Wayne S. Olson is the Superintendent at Copper Lake.

53. Wendy Peterson is now the Deputy Superintendent of the Lincoln Hills/Copper Lake School.

54. Prior to that appointment, she served as the education director for the campus.

55. Lori McAllister is the Copper Lake Corrections Unit Supervisor.

56. Copper Lake professes to adhere to Performance-based Standards (hereinafter, "PbS").

57. PbS is a data-driven improvement model grounded in research which provides standards for juvenile justice agencies, facilities and residential care providers

58. PbS is the universally accepted standard concerning how a juvenile correction facility should operate.

59. Copper Lake did not collect sufficient data for PbS purposes.

60. Ms. Peterson acknowledged PbS protocol which indicates that any amount of time beyond 15 minutes is to be considered "isolation".

61.   The September 2012 report produced by PbS entitled "Reducing Isolation and Room Confinement" states: "PbS standards are clear: isolating or confining a youth to her room should be used only to protect the youth from harming herself or others and if used, should be brief and supervised. Any time a youth is alone for 15 minutes or more is a reportable PbS event and is documented. PbS reports isolation, room confinement and segregation/special management unit data together to draw attention to practices that are inappropriate, ineffective and can have deadly consequences."

62.   At all times relevant hereto, Defendant Ourada knew or should have known of the systemic and excessive use of isolation cells at Copper Lake. Despite such knowledge Ourada failed to properly train and supervise staff at Copper Lake and acted with deliberate indifference in doing so.

63.   At all times relevant hereto, Defendant Westerhaus knew or should have known of the systemic and excessive use of isolation cells at Copper Lake. Despite such knowledge Westerhaus failed to properly train and supervise staff at Copper Lake and acted with deliberate indifference in doing so.

64.   At all times relevant hereto, Defendant Olson knew or should have known of the systemic and excessive use of isolation cells at Copper Lake. Despite such knowledge Olson failed to properly train and supervise staff at Copper Lake and acted with deliberate indifference in doing so.

65.   At all times relevant hereto, Defendant Peterson knew or should have known of the systemic and excessive use of isolation cells at Copper Lake. Despite such knowledge, Peterson failed to properly train and supervise staff at Copper Lake and acted with deliberate indifference in doing so.

66.   At all times relevant hereto, Defendant Palmer knew or should have known of the systemic and excessive use of isolation cells at Copper Lake. Despite such knowledge, Palmer failed to remove the Iowa girls placed at Copper Lake and acted with deliberate indifference in doing so.

## Ms. Reed's Confinement at Copper Lake

67.   Progress Reports indicate that from August 2015 to October 2015, Reed spent at least 34 days in isolation.

68.   Progress Reports indicate that from November 2015 to February 5, 2016, Ms. Reed spent an additional 30-40 days in isolation.

69.   For approximately 22 out of 24 hours per day, Ms. Reed, while serving a "safety unit" sentence, was in complete isolation.

70.   Isolation cells are approximately 7' by 10'.

71.   Only two of the isolation cells have toilets in them.

72.   Ms. Reed did not have occasion to be confined in one of the two isolation cells with toilets.

73.   The floors of the isolation cells are concrete.

74.   Some isolation cells are furnished with a metal cot with a thin mattress.

11

75.     Some isolation cells are furnished only with one thin mat on the floor to lie on.

76.     One blanket is provided.

77.     Some isolation cells have yellow urine stains on the floor/wall.

78.     The isolation cells have one window covered by a thick cage reducing light that can pass through.

79.     There is nothing else in the isolation cells.

80.     Ms. Reed lost count as to how many exact days she served in isolation however; she knows she has received at least three sentences of 17 days or more.

81.     Ms. Reed believes she was held in isolation, in the aggregate, for over two months.

82.     Ms. McAllister has indicated that Ms. Reed, while in an isolation cell, per policy, was let out for two hours per day.

83.     Ms. Reed has indicated she was outside her isolation cell for one hour per day and no more.

84.     During her daily one to two hour release from the isolation cell, Ms. Reed was kept in restraints.

85.     Upon her daily one to two hour release from her isolation cell, Ms. Reed was to shower, clean her room, receive 15 minutes to exercise, receive 10-15 minutes to write a letter, and use the restroom.

86.     If any time remained in her one to two hour release from her isolation cell, Ms. Reed was allowed only to sit in a chair facing a wall in the common area by

12

herself, but was not allowed to speak

87.    Ms. Reed was not released from isolation for meals; she ate her breakfast, lunch, and dinner, in her locked isolation cell.

88.    While in isolation Ms. Reed was provided 30 minutes of "education" on a daily basis.

89.    Prior to her placement at Copper Lake, Reed was not exhibiting suicidal ideations.

90.    Only after her placement at Copper Lake did Reed exhibit suicidal ideations.

91.    Progress Reports indicate that Ms. Reed received isolation "sentences" for expression of contemplated self-disfigurement and harm.

92.    November 24, 2015, at 10:10 p.m., in the midst of Ms. Reed serving a 17-day isolation sentence, a correctional officer peered into Ms. Reed's cell and found her gown tied tight around her neck.

93.    Ms. Reed was unresponsive.

94.    Once inside the cell, correction officers untightened the gown from Ms. Reed's neck and upon gasping for air Ms. Reed begged them to simply let her die.

95.    The correction officers eventually cut loose the gown with a pocketknife and Ms. Reed became upset that they would not let her die.

96.    Ms. Reed then began resisting their attempts to restrain her.

97.    The guards placed her back in the cell and shut the door.

98.    Ms. Reed received a conduct report for the incident and had more isolation time

added to her sentence.

99.   Only 1 out of the 4 isolation sentences Ms. Reed has received related to physically fighting another juvenile.

100.  All the other incidents that lead to her isolation were either self-harm behaviors or Ms. Reed being "disruptive" and "unsanitary" (referring to her urinating herself).

**Ms. Reed's Confinement when not in "Isolation"**

101.  Reed's small residential cell, when not held in isolation, was kept locked.

102.  Reed was required to "buzz" to be released.

103.  Reed was only allowed to use the restroom once every two hours.

104.  When not in school, Reed was locked in her rooms for one hour, then out for one hour, then in for one hour, then out for one hour, etc.

105.  Under PbS standards, this is a form of isolation.

106.  "Charges" of being disruptive or combative subjected Ms. Reed to isolation sentences.

107.  Before being confined in isolation, Ms. Reed had the ability to contest the "charges" brought against her.

108.  A Copper Lake staff member serving as a hearing officer conducts the hearings.

109.  The hearing officer reads the written report, talks to the juvenile, and then determines the length of time they are to spend in isolation if a finding of violation has occurred.

110.  Self-harm or disfigurement is considered a violation for which isolation is a

sentence.

111. Creating an unsanitary condition by urinating on oneself is considered a violation for which isolation is sentence.

112. Being "disruptive" (which can mean yelling, not complying with orders, back talk, etc.) is a violation for which isolation is a sentence.

113. Hearings, however, need only be held within 7 days.

114. Until the hearing, Ms. Reed was kept in isolation.

115. Any time that Ms. Reed accrued prior to the hearing did not count against her eventual sentence.

116. Ms. Reed once sat for two days in isolation until her hearing at which time she was released as the violation was unfounded.

**Excessive Force**

117. During one of her isolation cell sentences, a Supervisor Hoff pulled Ms. Reed's fingers through the food tray slot in the cell door resulting in scrapes and bleeding.

118. Upon information, State and/or Federal investigators aforementioned took photographs of Ms. Reed's fingers so as to document the scarring from the incident.

119. During one of her isolation cell sentences Ms. Reed was maced in retaliation for damaging a speaker in the cell.

120. During one of her isolation cell sentences, Ms. Reed attempted self-harm by

placing her head under the low metal cot; in response Supervisor Hoff stood on the top of the cot frame to tighten it against Ms. Reed's neck.

121.   Another staff member witnessed the metal cot incident, and filled out an incident report to report Supervisor Hoff's conduct.

122.   No employee at Copper Lake took any corrective action and no report was made to the Emmet County Juvenile Court concerning the metal cot incident.

123.   It was not until Ms. Reed's Guardian ad Litem spoke with the aforementioned staff witness to confirm Ms. Reed's account that the incident was brought to the Emmet County Juvenile Court's attention.

124.   During one of her isolation cell sentences, Ms. Reed was attempting self-harm, and Supervisor Hoff slammed her against the cell wall with such force as to leave a contusion on her head and a laceration on her lips.

125.   A video used for training staff at the facilities actually used excessive force, a fact since verified by the Wisconsin Department of Corrections.

## COUNT I
VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES
CONSTITUTION PURSUANT TO 42 U.S.C. § 1983
Right to be Free from Cruel and Unusual Punishment
(Against All Defendants in their individual capacities)

126.   Plaintiff repleads paragraphs 1 through 125 as if fully set forth herein.

127.   At all times material hereto, Defendants were acting under color of State law.

128.   The Eighth Amendment guarantees Ms. Reed's right to be free from cruel and unusual punishment.

16

129. Defendants contracted with the State of Iowa to house and confine Ms. Reed.

130. Defendants were vested with control over the custody and care of Ms. Reed.

131. Defendants owed a duty of care to Ms. Reed to ensure her custody was reasonably safe and to detect and correct problems that could cause injury to Ms. Reed.

132. The Defendants violated Ms. Reed's Eighth Amendment rights when they confined, restrained, and punished her in cruel and unusual manner.

133. The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

134. As a direct and proximate result of Defendant's acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants in a fair and reasonable monetary amount to be determined by the trier of

fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT II
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT TO THE
UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983
Right to Be Free From Excessive Force
(Against All Defendants in their individual capacities)

135.   Plaintiff repleads paragraphs 1 through 134 as if fully set forth herein.

136.   At all times material hereto, Defendants were acting under color of State law.

137.   The Fourth Amendment and Fourteenth Amendments guarantee Ms. Reed's right to bodily integrity and to be secure in her person and free from excessive force.

138.   All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law and the excessive force inflicted upon Ms. Reed was conducted within the scope of their official duties or employment.

139.   The Defendants' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Ms. Reed's federally protected rights.

140.   The force used by these Defendants shocks the conscience and violated the Fourth and Fourteenth Amendment rights of Plaintiff.

18

141. The Defendants used such force as was objectively unreasonable, excessive and conscious shocking physical force.

142. None of the Defendants took reasonable steps to protect Ms. Reed from the objectively unreasonable and conscience shocking excessive force of other Defendants despite being in a position to do so.

143. These individual Defendants acted in concert and joint action with each other.

144. The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

145. As a direct and proximate result of Defendants' acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants, in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to

punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT III

VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983
Right to Due Process of Law, Substantive and Procedural
(Against All Defendants in their individual capacities)

146.   Plaintiff repleads paragraphs 1 through 145 as if fully set forth herein.

147.   At all times material hereto, Defendants were acting under color of State law.

148.   The Fourteenth Amendment guarantees that no person shall be deprived of life, liberty, or property, without due process of law.

149.   The Defendants contracted with the State of Wisconsin and Copper Lake to house and confine Ms. Reed on their behalf.

150.   Defendants were vested with control over the custody and care of Ms. Reed.

151.   Defendants owed a duty of care to Ms. Reed to ensure her custody was reasonably safe and to detect and correct problems that could cause injury to Ms. Reed.

152.   The Defendants violated Ms. Reed's Fourteenth Amendment rights when they confined, restrained, treated, and punished her in the aforementioned manner.

153.   The Defendants deprived Ms. Reed of a protected liberty interest by punishing, restraining, and confining her in the manner aforementioned.

154.   The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

155.   As a direct and proximate result of Defendants' acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants, in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT IV
VIOLATION OF ARTICLE I, SECTION 17 OF THE IOWA CONSTITUTION
Right to be Free from Cruel and Unusual Punishment

(Against All Defendants in their individual and official capacities)

156.   Plaintiff repleads paragraphs 1 through 155 as if fully set forth herein.

157.   At all times material hereto, Defendants were acting under color of State law.

158.   Article I, section 17 of the Iowa Constitution guarantees Ms. Reed's right to be free from cruel and unusual punishment.

159.   Defendants contracted with the State of Iowa to house and confine Ms. Reed.

160.   Defendants were vested with control over the custody and care of Ms. Reed.

161.   Defendants owed a duty of care to Ms. Reed to ensure her custody was reasonably safe and to detect and correct problems that could cause injury to Ms. Reed.

162.   The Defendants violated Ms. Reed's article I, section 17 rights when they confined, restrained, and punished her in cruel and unusual manner.

163.   The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

164.   As a direct and proximate result of Defendant's acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and

pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT V
VIOLATION OF ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION
Right to Be Free From Excessive Force
(Against All Defendants in their individual and official capacities)

165.   Plaintiff repleads paragraphs 1 through 164 as if fully set forth herein.

166.   At all times material hereto, Defendants were acting under color of State law.

167.   Article I, section 8 guarantees Ms. Reed's right to bodily integrity and to be secure in her person and free from excessive force.

168.   All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law and the excessive force inflicted upon Ms. Reed was conducted within the scope of their official duties or employment.

169.   The Defendants' actions and use of force, as described herein, were also malicious

and/or involved reckless, callous, and deliberate indifference to Ms. Reed's Iowa Constitutional rights.

170. The force used by these Defendants shocks the conscience and violated the article I, section 8 rights of Plaintiff.

171. The Defendants used such force as was objectively unreasonable, excessive and conscious shocking physical force.

172. None of the Defendants took reasonable steps to protect Ms. Reed from the objectively unreasonable and conscience shocking excessive force of other Defendants despite being in a position to do so.

173. These individual Defendants acted in concert and joint action with each other.

174. The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual and legal malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

175. As a direct and proximate result of Defendants' acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering

and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants, in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT VI
VIOLATION OF ARTICLE I, SECTION 9 OF THE IOWA CONSTITUTION
Right to Due Process of Law, Substantive and Procedural
(Against All Defendants in their individual and official capacities)

176.   Plaintiff repleads paragraphs 1 through 175 as if fully set forth herein.

177.   At all times material hereto, Defendants were acting under color of State law.

178.   Article I, section 9 guarantees that no person shall be deprived of life, liberty, or property, without due process of law.

179.   The Defendants contracted with the State of Wisconsin and Copper Lake to house and confine Ms. Reed on their behalf.

180.   Defendants were vested with control over the custody and care of Ms. Reed.

181.   Defendants owed a duty of care to Ms. Reed to ensure her custody was reasonably safe and to detect and correct problems that could cause injury to Ms.

Reed.

182.   The Defendants violated Ms. Reed's article I, section 9 rights when they confined, restrained, treated, and punished her in the aforementioned manner.

183.   The Defendants deprived Ms. Reed of a protected liberty interest by punishing, restraining, and confining her in the manner aforementioned.

184.   The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

185.   As a direct and proximate result of Defendants' acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants, in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct,

along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT VII
VIOLATION OF ARTICLE I, SECTION I OF THE IOWA CONSTITUTION
Right to Safety and Happiness
(Against All Defendants in their individual and official capacities)

186.   Plaintiff repleads paragraphs 1 through 185 as if fully set forth herein.

187.   Article I, section 1 guarantees that no person shall be deprived of pursuing and obtaining safety and happiness.

188.   Defendants were vested with control over the custody and care of Ms. Reed.

189.   Defendants violated Ms. Reed's right to safety and happiness when they confined, restrained, treated, and punished her in the aforementioned manner.

190.   The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

191.   As a direct and proximate result of Defendants' acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and

27

pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants, in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the premises.

## COUNT VIII
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

192.  Plaintiff repleads paragraphs 1 through 191 as if fully set forth herein.

193.  Defendants contracted with the State of Iowa to house and confine Ms. Reed.

194.  Defendants were vested with control over the custody and care of Ms. Reed.

195.  Defendants owed a duty of care to Ms. Reed to ensure her custody was reasonably safe and to detect and correct problems that could cause injury to Ms. Reed.

196.  The Defendants' confinement, restraint, treatment, and punishment of Mrs. Reed are so outrageous and extreme as to go beyond all possible bounds of decency.

28

197.   The Defendants intended to cause emotional distress to Ms. Reed or acted in reckless disregard of the probability of causing emotional distress to her.

198.   Ms. Reed has suffered and continues to suffer emotional distress.

199.   The aforementioned acts of Defendants were perpetrated against Ms. Reed without justification.   The acts were excessive, done with actual malice towards Ms. Reed, and with willful and wanton indifference to, and deliberate disregard for human life and the constitutional rights of Ms. Reed, who is therefore entitled to exemplary damages.

200.   As a direct and proximate result of Defendant's acts aforesaid, Ms. Reed has in the past and will in the future suffer mental and emotional harm and anguish, anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace, uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and pain and suffering, consequential damages and actual and compensatory damages including, but not limited to, past, present and future pain and suffering and medical expenses.

WHEREFORE, the Plaintiff, Ms. Reed, prays for judgment against the Defendants in a fair and reasonable monetary amount to be determined by the trier of fact, for punitive damages against the individual Defendants in an amount sufficient to punish them and deter them and others from the same or similar wrongful conduct, along with interest, costs of this action, and attorney fees as provided by law, punitive damages, as well as such other relief as may be deemed just and equitable in the

premises.

## COUNT IX
NEGLIGENCE
(Against All Defendants)

201     Plaintiff repleads paragraphs 1 through 200 as if fully set forth herein.

202.    Defendants were vested with control over the custody and care of Ms. Reed.

203.    Defendants owed a duty of care to Ms. Reed to ensure her custody was reasonably safe and to detect and correct problems that could cause injury to Ms. Reed.

204.    The Defendants were negligent in failing to ensure Copper Lake employed properly trained staff and employees which resulted in the improper use of isolation and excessive force on Ms. Reed.

205.    The Defendants were negligent in Failing to properly ensure that Copper Lake staff and employees were properly supervised, which resulted in the improper use of isolation and excessive force on Ms. Reed.

206.    The Defendants were negligent in failing to ensure Ms. Reed received proper and safe care.

207.    The Defendants were negligent in failing to ensure Ms. Reed received proper education.

208.    The Defendants were negligent in failing to ensure Copper Lake was not dangerous.

209.    The Defendants were negligent in failing to act as a reasonable custodian of Ms.

Reed.

210.    As a direct and proximate result of Defendants' acts aforesaid, Ms. Reed has in

the past and will in the future suffer mental and emotional harm and anguish,

anxiety, fear, depression, loss of enjoyment of life, degradation, disgrace,

uncertainty, apprehensiveness, grief, restlessness, dismay, tension, unease, and

pain and suffering, consequential damages and actual and compensatory

damages including, but not limited to, past, present and future pain and suffering

and medical expenses.

## ATTORNEY'S FEES

COMES NOW, Plaintiff, by and through counsel, and hereby petitions for costs

of this action and attorney fees as provided by Iowa law, 42 U.S.C. § 1988, and as may

otherwise be allowed by law.

## JURY DEMAND

COMES NOW, Plaintiff, by and through counsel, and hereby demands a jury

trial on all issues in the above entitled action.

WHEREFORE, the Plaintiff, Laera Reed, prays for judgment against the

Defendants in a fair and reasonable monetary amount to be determined by the trier of

fact, for punitive damages against the individual Defendants in an amount sufficient to

punish them and deter them and others from the same or similar wrongful conduct,

along with interest, costs of this action, and attorney fees, as well as such other relief as

may be deemed just and equitable in the premises.

/s/ Jack Bjornstad_____          /s/ John M. Sandy_____
Jack Bjornstad                             John M. Sandy
Jack Bjornstad Law Office                  Sandy Law Firm
1017 Highway 71, P.O. Box 408              304 18th Street, Box 445
Okoboji, IA    51355                       Spirit Lake, IA      51360
Phone: 712-332-5225                        Phone: 712-336-5588
jack@bjornstad.legaloffice.pro             jmsandy@sandylawpractice.com

Original filed EDMS.