IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAERA REED,

                                                                                                        OPINION AND ORDER

          Plaintiff,

                                                                                                         17-cv-590-bbc

          v.

JOHN OURADA, PAUL WESTERHAUS,
WAYNE S. OLSON, WENDY PETERSON,
BRAIN GUSTKE, LORI MCCALISTER,
KYLE HOFF and CHARLES PALMER,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAIGE RAY-CLUNEY,

                                                                                    OPINION AND ORDER

          Plaintiff,

                                                                                  17-cv-591-bbc

          v.

JOHN OURADA, PAUL WESTERHAUS,
WAYNE S. OLSON, WENDY PETERSON,
BRAIN GUSTKE, LORI MCCALISTER,
CHARLES PALMER, DARRELL STETZER and
ANDREW YORDE,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiffs Laera Reed and Paige Ray-Cluney, both residents of Iowa, have brought a number of constitutional and state law claims against several defendants arising out of alleged abuse they suffered while confined at the Copper Lake School for girls in Irma, Wisconsin. Plaintiffs were confined at Copper Lake pursuant to court orders from Iowa

state courts. At the time of their confinement, the State of Iowa had contracted with the State of Wisconsin to house girls at Copper Lake. Acting in his position as the director of the Iowa Department of Human Services, defendant Charles Palmer had authorized the contract on behalf of the State of Iowa. Plaintiffs contend that Palmer should be held liable for the harm they suffered while at Copper Lake because he knew, or should have known, of the abuse at the Copper Lake but failed to take any steps to remove plaintiffs.

Now before the court is defendant Palmer's motions to dismiss plaintiffs' claims against him on numerous grounds. Dkt. #8 in 17-cv-590-bbc and 17-cv-591-bbc. (Unless otherwise noted, citations to docket numbers in this opinion refer to case number 17-cv-590.) As explained below, I am granting Palmer's motions to dismiss because I conclude that he is entitled to qualified immunity with respect to plaintiffs' federal claims, plaintiffs concede they have not exhausted their state law tort claims and I decline to exercise supplemental jurisdiction over plaintiff Reed's constitutional claims arising under Iowa's constitution. Therefore, I am dismissing Palmer from these cases.

OPINION

Plaintiffs bring claims for monetary damages against defendant Palmer (and all of the other defendants) under the Fourth, Eighth and Fourteenth Amendments, as well as Iowa state law. Plaintiff Reed also brings several claims for monetary damages under the Iowa Constitution. Defendant Palmer moves to dismiss plaintiffs' claims against him on the grounds that: (1) this court cannot exercise personal jurisdiction over him; (2) Wisconsin

2

is an inconvenient forum; (3) Iowa has not waived sovereign immunity for plaintiffs' constitutional claims; (4) this court should abstain from determining undeveloped questions of Iowa law; (5) plaintiffs have failed to state a claim upon which relief may be granted; (6) Palmer has absolute immunity; (7) Palmer has qualified immunity; (8) plaintiffs cannot recover monetary damages; (9) plaintiffs did not exhaust their tort claims; and (10) Iowa has not waived sovereign immunity for claims of false imprisonment. Plaintiffs concede they have not administratively exhausted their tort claims arising under Iowa law, dkt. #19 at 18. Thus, I will dismiss those claims without prejudice and without further discussion. Segura v. State, 889 N.W.2d 215, 224 (Iowa 2017) (courts lack jurisdiction to consider tort claims that have not been administratively exhausted).

Generally, I would address defendant's personal jurisdictional arguments next. However, because plaintiffs' federal constitutional claims against defendant Palmer are barred by the doctrine of qualified immunity and I decline to exercise supplemental jurisdiction over the state law constitutional claims, I need not address defendant's personal jurisdiction arguments. 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.6 (stating that a court can "resolv[e] the suit on the merits when they clearly must be decided in favor of the party challenging [personal] jurisdiction, thereby obviating any need to decide the question") (collecting cases); Evangelical Benefit Trust v. Lloyd's Underwriters Syndicate Nos. 2987, 1607, 1183 & 2001, No. 09 C 4004, 2010 WL 2927404, at *3 (N.D. Ill. July 19, 2010) (granting motion to dismiss on merits without resolving question of personal jurisdiction).

A.  Qualified Immunity

Defendant Palmer argues that he is entitled to immunity for plaintiffs' constitutional claims against him in his individual capacity. Qualified immunity protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 555 U.S. 223, 236 (2009). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (quotations and citations omitted). Qualified immunity "give[s] government officials breathing room to make reasonable but mistaken judgment about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendant raises it. Archer v. Chisholm, 870 F.3d 603, 613 (7th Cir. 2017).

As set forth in their complaints, plaintiffs' specific constitutional claims arise under the Fourth, Eighth and Fourteenth Amendments and are based on allegations that plaintiffs were subjected to cruel and unusual punishment and excessive force while housed at Copper Lake. With respect to defendant Palmer in particular, however, plaintiffs' complaints

4

contain few allegations about his involvement in the alleged constitution violations. Specifically, the only allegations regarding Palmer are that:

> (1) "[F]or $301 per day per girl, the State of Iowa, by and through Charles Palmer, contracted with the State of Wisconsin for use of the Wisconsin Girls State Training School," Cpt. ¶ 20;
>
> (2) "In June 2015, [plaintiff] was in the custody of the Director of the Iowa Department of Human Services, defendant Charles Palmer, pursuant to Court Order," Cpt. ¶ 21;
>
> (3) "At all times material hereto, the State of Iowa, by and through Charles Palmer and the Iowa Department of Human Services, monitored and received reports concerning [plaintiff's] confinement at Copper Lake," Cpt. ¶ 22;
>
> (4) "At all times relevant hereto, Defendant Palmer knew or should have known of the systemic and excessive use of isolation cells at Copper Lake. Despite such knowledge, Palmer failed to remove the Iowa girls placed at Copper Lake and acted with deliberate indifference in doing so." Cpt. ¶ 66.

Plaintiffs clarify in their brief that they are "not claim[ing that their] initial detention or restraint [at Copper Lake] [was] unlawful, [but] instead [are] challeng[ing] the conditions of [their] detention and restraint." Plts.' Br., dkt. #19, at 18. They further argue that Palmer in particular violated their rights by failing to take steps to remove them from Copper Lake after learning about the systemic and excessive use of isolation cells there. Id. at 14. They concede that "it is true that to remove [plaintiffs] from their Copper Lake placements would have required a court order," but they blame defendant Palmer for "never [seeking] such a court order." Id.

Defendant Palmer contends that he is entitled to qualified immunity because neither plaintiffs' allegations nor the legal theories in their briefs support a claim that he violated a statutory or constitutional right that was clearly established at the time of his actions. In

5

particular, he argues that it was not clearly established that simply because a government actor signs a contract that permits individuals to be confined at an institution and later "monitors" and receives a "report" regarding the confinement, the government official has a constitutional obligation to take steps to remove the individuals upon learning of problems at the institution. Citing J.H. ex rel. Higgin v. Johnson, 346 F.3d 788, 792 (7th Cir. 2003), Palmer argues that plaintiffs would have to allege that he was "deliberately indifferent" to "a substantial and known risk," which they have not done.

In response, plaintiffs do not cite any cases that clearly establish what the constitution requires of a government official in defendant's position under similar circumstances. Instead, plaintiffs cite only one case, Turner v. Palmer, 1:14-cv-0024-JEG-HCA (S.D. Iowa), which involved claims against defendant Palmer and other employees of Iowa's Department of Human Services regarding systematic use of isolation cells at the Iowa Juvenile Home, an institution controlled and managed by Palmer and the department. In denying the defendants' motion to dismiss on qualified immunity grounds, the Iowa court held that it was clearly established that placing juveniles in isolation cells for extended periods could violate the constitution. Id. (Dkt. #24, Feb. 4, 2015) (citing R.G. v. Koller, 415 F. Supp. 2d 1129 (D. Haw. 2006)).

The district court's decision in Turner does not amount to "clearly established law" that controls in the present case for two reasons. First, "clearly established law" requires controlling precedent from the United States Supreme Court, the United States Court of Appeals or the highest court in the state. Lane v. Franks, 134 S. Ct. 2369, 2381 (2014).

The decision of a federal district court decision cannot be considered "clearly established law." Second, the claims against defendant Palmer in this case are clearly distinguishable from those in Turner, in which Palmer and the other Department of Human Services employees actually controlled and operated the institution in which the abuse had occurred and "oversaw the use of the isolation cells in which [the] plaintiff was confined." Turner, 1:14-cv-0024-JEG-HCA, dkt. #24 at 3. The allegations against Palmer in this case are completely different. Palmer is not alleged to have had a role in managing, operating or supervising the Copper Lake school. Instead, plaintiffs allege only that Palmer authorized the contract with Wisconsin to send girls to Copper Lake and later received "reports" and "monitored" girls sent there. However, plaintiffs do not provide any details about what the "monitoring" entailed or what information was contained in the reports that Palmer received. They do not allege that Palmer knew plaintiffs had been subjected to excessive isolation, that he "oversaw" the isolation or that he could have requested or required changes to the situation at Copper Lake. They also do not allege that Palmer's role as the Director of the Department of Human Services involved making recommendations to state court judges regarding placement decisions or that his requests would be appropriate or influential. Instead, they argue in their brief that Palmer "had the power to ask the Juvenile Court to modify the placement," dkt. #19 at 14, and cite as evidence a motion filed with the court by "Juvenile Services," the agency that had "jurisdiction" over plaintiffs, requesting that plaintiff Reed be moved from Copper Lake after she had completed her programming there. Id. (citing dkt. #10-3.) These allegations are not enough to allow the court to infer that

7

Palmer had the knowledge, responsibility or influence to request removal of plaintiffs from Copper Lake.

Moreover, to recover damages against a state actor under § 1983, a plaintiff must show the actor was "personally responsible for the constitutional deprivation." J.H. ex rel Johnson, 346 F.3d at 793 (citing Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 614 (7th Cir. 2002), and Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001)). A supervisor can be held liable under § 1983 only if he or she "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." Doyle, 305 F.3d at 614 (citing Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001)). Plaintiffs' allegations do not support the drawing of an inference that defendant Palmer was personally responsible for any violation of plaintiffs' constitutional rights.

Accordingly, because plaintiffs have not shown that defendant Palmer violated a clearly established constitutional right, their federal claims against him will be dismissed.

### B. Iowa Constitutional Claims

Plaintiff Reed includes claims against defendant Palmer under various provisions of the Iowa Constitution, including claims under Article I, Sections 8, 9 and 17. Recently, the Iowa Supreme Court held that some provisions of Iowa's constitution are "self-executing" and may permit damages claims without legislative authorization. Godfrey v. State of Iowa, 898 N.W.2d 844 (Iowa June 30, 2017). Defendant Palmer argues that because the Iowa

Supreme Court has not yet decided the contours of a direct Iowa constitutional damages cause of action, and has not addressed the viability of claims similar to those in this case, this court should abstain from exercising jurisdiction over the Iowa constitutional claims. In response, plaintiff Reed argues that abstention is unnecessary because this court can simply certify any questions of Iowa law to the Iowa Supreme Court for consideration.

I agree with defendant Palmer. After I dismiss plaintiffs' federal constitutional and state tort claims, the only claims remaining against Palmer would be plaintiff Reed's claims arising under the Iowa Constitution. Under 28 U.S.C. 1367(c)(1), a federal district court can decline to exercise supplemental jurisdiction over a state law claim that "raises a novel or complex issue of State law." I conclude that the recently recognized potential right to monetary damages under the Iowa Constitution is a novel issue of state law that should be developed further by Iowa state courts, not by a federal court in Wisconsin. For these reasons, I am declining to exercise supplemental jurisdiction over the Iowa constitutional claims against defendant Palmer.

ORDER

IT IS ORDERED that

1. Defendant Charles Palmer's motions to dismiss, dkt. #8 in 17-cv-590-bbc and 17-cv-591-bbc, are GRANTED. Plaintiffs Paige Ray Cluney and Laera Reeds' federal constitutional claims against Palmer are dismissed on grounds of qualified immunity; plaintiffs' Iowa state tort claims against Palmer are dismissed without prejudice for failure

to exhaust administrative remedies; and the court declines to exercise supplemental jurisdiction over plaintiff Reed's claims against Palmer under the Iowa Constitution.

2. Defendant Palmer is DISMISSED as a defendant in these cases.

Entered this 28th day of December, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge